IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| OTHA LEE JONES, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-1581 |
| | § | |
| RICK THALER, | § | |
| | § | |
| *Respondent*. | § | |

## MEMORANDUM OPINION AND ORDER

Otha Lee Jones, a state inmate proceeding *pro se*, seeks habeas corpus relief under 28 U.S.C. § 2254, challenging his state court conviction. Respondent filed a motion for summary judgment (Docket Entry No. 8), to which petitioner responded. (Docket Entry No. 9.) Petitioner also seeks leave to amend his petition to add an additional ground for habeas relief. (Docket Entry No. 10.)

Based on consideration of the pleadings, the motions and response, the record, and the applicable law, the Court DENIES leave to amend, GRANTS summary judgment, and DISMISSES this case for the reasons that follow.

### *Background and Claims*

A jury found petitioner guilty of aggravated assault with a deadly weapon on December 6, 2006, and assessed punishment at twelve years incarceration. The conviction was affirmed on direct appeal. *Jones v. State*, No. 13-07-0098-CR (Tex. App. – Corpus

Christi 2008, no pet.).  Petitioner did not seek discretionary review.  His state application for

habeas relief was denied by the Texas Court of Criminal Appeals on April 1, 2009.

Petitioner filed the instant petition on May 19, 2009, challenging the sufficiency of

the evidence.  Respondent moves for summary judgment, and argues that petitioner's habeas

claim is without merit.

### The Applicable Legal Standards

This petition is governed by the applicable provisions of the Antiterrorism and

Effective Death Penalty Act of 1996 (AEDPA).  28 U.S.C. § 2254.  Under the AEDPA,

federal relief cannot be granted on legal issues adjudicated on the merits in state court unless

the state adjudication was contrary to clearly established federal law as determined by the

Supreme Court, or involved an unreasonable application of clearly established federal law

as determined by the Supreme Court.  *Williams v. Taylor*, 529 U.S. 362, 404-05 (2000); 28

U.S.C. §§ 2254(d)(1), (2).  A state court decision is contrary to federal precedent if it applies

a rule that contradicts the governing law set forth by the Supreme Court or if it confronts a

set of facts that are materially indistinguishable from a Supreme Court decision and arrives

at a different result from that precedent.  *Early v. Packer*, 537 U.S. 3, 7-8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies

the correct legal rule to the facts of a particular case, or unreasonably extends a legal

principle from Supreme Court precedent to a new context where it should not apply, or

unreasonably refuses to extend that principle to a new context where it should apply.

*Williams*, 529 U.S. at 409.  In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable.  *Id.* at 411.

The AEDPA affords deference to a state court's resolution of factual issues.  Under 28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless it is objectively unreasonable in light of the evidence presented in the state court proceeding.  *Miller-El v. Cockrell*, 537 U.S. 322, 343 (2003).  A federal habeas court must presume the underlying factual determination of the court to be correct, unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(c)(1); *see also Miller-El*, 537 U.S. at 330-31.

### *Analysis*

Petitioner contends that the evidence is legally and factually insufficient to support the conviction for aggravated assault with a deadly weapon.  Only petitioner's legal insufficiency challenge raises a cognizable federal habeas ground, as factual sufficiency of the evidence is not reviewed on section 2254 habeas review.  *See, e.g., Pemberton v. Collins*, 991 F.2d 1218, 1223-24 (5th Cir. 1993).

In reviewing petitioner's sufficiency complaints on direct appeal, the state court of appeals set forth the following statement of facts:

On January 6, 2006, Thomas Alaniz and his girlfriend, Constance Slaughter, were in Alaniz's Bowie Street apartment in Houston when Alaniz heard a knock on his door.  When he asked who was there, no one answered.  Again, he heard someone knock on the door, and when he opened it, he saw Jones, who began cursing at him and demanding to know the whereabouts of Alaniz's ex-girlfriend, Penny Williamson, who had previously lived in the apartment.  When Alaniz told him that Williamson was not at the apartment, he replied in a loud voice that Alaniz was lying and 'disrespecting' him.

Alaniz let Jones come into the apartment to see for himself that Williamson was not there.  When Jones entered the apartment, a second man, Kurt Villareal, who was carrying a shotgun, followed him inside.  Villareal pointed the shotgun at Alaniz's face and told him not to move or he would kill him.  Villareal and Jones ordered Alaniz and Slaughter into the kitchen, and Villareal stated, 'why don't we just kill'em and get it over with.'  Jones demanded to know where Williamson was and asked where his rings were.  Alaniz denied knowing Williamson's whereabouts and told Jones and Villareal that if they left, he would not call the police.  Jones responded that he knew Alaniz would not call the police because Jones knew where Alaniz's wife lived and where his son worked.  Jones then hit Alaniz in the face with a closed fist.  Jones and Villareal, who was still pointing the shotgun at Alaniz, then told Alaniz to go into the bathroom.  They ordered Alaniz to face the shower and not move.  After a short time, Alaniz retrieved his pistol from his nightstand and entered the kitchen, where he saw Jones 'wrapped around' Slaughter, trying to kiss her.  Alaniz pointed his pistol at Jones and told him to leave.

Jones left the apartment and headed to a car in the parking lot.  Alaniz followed him to the car and saw Villareal getting into the vehicle.  As Alaniz approached the vehicle, Villareal began firing the shotgun at him, and Alaniz returned fire.  Jones and Villareal sped away and hit a pole.  Alaniz ran toward the car and shot at it three times.  Alaniz opened the driver's side door, and Villareal fired the shotgun at Alaniz, injuring him in the arm.  Alaniz ran back to the apartment, yelling at Slaughter to get into his truck.  Alaniz and Slaughter drove away and flagged down a police unit.  Later, Alaniz positively identified both Jones and Villareal out of a lineup.

Issac Villareal, who managed the apartment complex where the incident occurred, was outside his own apartment during the incident.  He saw two men in a purple Honda pull into the parking lot.  The passenger, Jones, got out and approached Alaniz's apartment while the driver, Kurt Villareal, stayed behind.

Issac saw Jones and Villareal return to the Honda and take, from the trunk, what looked like a shotgun covered with a jacket. The two men went to Alaniz's apartment with the shotgun and after a short time, Jones and Villareal hurriedly returned to the Honda. Alaniz ran to the Honda, pointing a pistol and trying to open the driver's side door. Alaniz shot at the car. The driver of the car tried to drive away, but he hit a pole. Alaniz again approached the car, and more shots were fired. Issac testified that shots from the pistol and the shotgun went off simultaneously. He then saw Alaniz running back toward the apartment, and Alaniz and Slaughter 'sped off' in a truck. Jones then got out of the car, but Villareal stayed inside. Jones walked toward the apartment complex, approaching an unidentified man, and the man and Jones walked back to the car, got in, and drove away.

Andrea Rodriguez, a Houston police officer, testified she and another officer were on patrol when they were flagged down by Alaniz and Slaughter. Officer Rodriguez stated that Alaniz had blood on his forearm and his face. She said he was 'very panicky' and 'distraught.' Slaughter was crying and was 'very frightened, very distraught.' Both officers helped Alaniz receive treatment for his injury. Later, the officers went to the crime scene, where they found two beer bottles, four shells from Alaniz's gun, a shotgun, and a spent shotgun shell. Officer Rodriguez learned that a man was being treated at Southeast Memorial Hospital for gun-shot wounds. Officer E.L. Chew was dispatched to the hospital to investigate.

Officer Chew testified that upon arriving at the hospital, she was directed to a vehicle which had been parked by a shooting victim. The vehicle matched the description she had received, and it had four bullet holes on the driver's side. She then was directed to the victim's room, where she identified Kurt Villareal, who had gun-shot wounds to his shoulder and abdomen.

*Jones*, at *1.

In rejecting petitioner's legal sufficiency challenge on direct appeal, the state court of appeals found as follows:

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential

5

elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319. The trier of fact is the sole judge of the weight and credibility of the evidence. Thus, when performing a legal sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the fact-finder. We must resolve any inconsistencies in the evidence in favor of the judgment.

*     *     *     *

A person commits the offense of aggravated assault when 'the person commits assault as defined in section 22.01,' and the person 'causes serious bodily injury' or 'uses or exhibits a deadly weapon during the commission of the assault.' *See* TEX. PENAL CODE ANN. § 22.02. A deadly weapon is defined as (1) 'a firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury' or (2) 'anything that in the manner of its use is capable of causing death or serious bodily injury.' *See id.* § 1.07(a)(15). A shotgun is *per se* a deadly weapon.

A person commits an assault, as defined in section 22.01, if the person (1) 'intentionally, knowingly, or recklessly causes bodily injury to another,' or (2) 'intentionally or knowingly threatens another with imminent bodily injury,' or (3) 'intentionally or knowingly causes physical contact with another when the person knows or should reasonably believe that the other will regard the contact as offensive or provocative.' *See* TEX. PENAL CODE ANN. § 22.01(a). Assault by threat does not require that the victim perceive a threat at the time the offense occurred; instead, the statute only requires the defendant to communicate a threat of imminent bodily injury.

A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both. TEX. PENAL CODE ANN. §§ 7.01(a), 7.01(a)(2). A person is criminally responsible for an offense committed by the conduct of another if, acting with the intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. TEX. PENAL CODE ANN. § 7.02(a)(2).

6

Evidence is sufficient to convict a defendant under the law of parties when he or she is physically present at the commission of the offense and encourages the commission of the offense either by words or by other agreement.  While the presence of an accused at the scene of an offense is not alone sufficient to support a conviction, it is a circumstance tending to prove guilt, which, combined with other facts, may suffice to show that the accused was a participant.  Further, participation in an enterprise may be inferred from circumstances and need not be shown by direct evidence.

Here, the evidence showed that Jones, along with Villareal, threatened to kill Alaniz while pointing a shotgun at his face.  Jones hit Alaniz in the face with his fist, and threatened Alaniz by indicating that he knew where his wife lived and where his son worked.  Jones participated with Villareal as they ordered Alaniz into the bathroom, still pointing the shotgun at him.  Finally, the evidence showed that Jones was in the car with Villareal when Villareal fired the shotgun at Alaniz, injuring him in the arm.

When viewing the evidence under the appropriate legal standards, we conclude that the evidence was both legally and factually sufficient to support the jury's verdict.

*Jones*, at *1-2 (citations omitted).

After carefully reviewing the state court record, this Court agrees with the state court of appeals' determination that the evidence was legally sufficient to support petitioner's conviction.  Petitioner sets forth nothing more than his bald disagreements with the jury's verdict and the state court's decisions, and presents no probative evidence precluding summary judgment in this case.

Petitioner fails to show that the state court's determination is in conflict with established federal law or is objectively unreasonable, and fails to rebut the presumption of

factual correctness with clear and convincing evidence.  Respondent is entitled to summary judgment dismissing this claim.

### *Motion for Leave to Amend*

Petitioner filed a motion seeking leave to amend his petition to add a Sixth Amendment confrontation claim.  (Docket Entry No. 10.)  The motion is DENIED as untimely, as it was filed after petitioner filed his response to the motion for summary judgment.  Further, the record shows that the proposed Sixth Amendment confrontation challenge was not raised in state court and is unexhausted.

### *Conclusion*

Respondent's motion for summary judgment (Docket Entry No. 8) is GRANTED, and the motion for leave to amend (Docket Entry No. 10) is DENIED.  The petition for a writ of habeas corpus is DENIED, and this case is DISMISSED WITH PREJUDICE.  A certificate of appealability is DENIED.  Any and all pending motions are DENIED AS MOOT.

The Clerk will provide copies of this order to the parties.

Signed at Houston, Texas, on December 11, 2009.

Gray H. Miller
United States District Judge